IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **THERESA BELL,** *Plaintiff*, | § § § | |
| v. | § § § | CIVIL ACTION NO.: _____ |
| **CITY OF TEAGUE,** *Defendant*. | § § § § § | JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

Plaintiff, THERESA BELL, (hereinafter "Plaintiff" or "Bell"), files this Original Complaint complaining of and about Defendant, CITY OF TEAGUE ("Defendant") and for causes of action would show the following:

### I.  PARTIES

2. Plaintiff Theresa Bell is a citizen of the United States and the State of Texas and resides at 120 Private Road 614 - Teague, TX 75860, United States.

3. City of Teague is a municipality under the laws of Texas. At all times pertinent to this case, Plaintiff was employed by the City of Teague. The City of Teague may be served at 105 South 4th Ave - Teague, TX 75860 United States.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: Title VII of the Civil Rights Act of 1964 (as amended) (which is codified in 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)) (hereinafter referred to as "Title VII") and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §206(d). The Court has supplemental jurisdiction over Plaintiff's claims under Texas Labor Code § 21.0001 et seq.

5. Venue is proper in the Western District of Texas - Waco Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where the Defendant's principal place of business exists, Freestone County.

### IV. NATURE OF THE ACTION

6. This is an action brought pursuant to Title VII, the Equal Pay Act, and the Texas Labor Code to correct and recover for Defendant's unlawful sex/gender discrimination, hostile work environment and retaliation claims and to deter Defendant from continuing its unlawful and discriminatory employment practices.

### V. CONDITIONS PRECEDENT

7. On June 14th, 2023, Plaintiff filed her administrative Charge of Discrimination (Charge No. 450-2023-06826) with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against Defendant for sex discrimination, hostile work environment, and retaliation.

7. Plaintiff filed this lawsuit within 90 days of receiving her administrative charge Right to Sue (RTS Issued On: 12/31/2023) as required under Title VII and within two years of her administrative charge under Chapter 21 of the Texas Labor Code ("TCHRA").

## VI.   FACTS

8. In May of 2011, David Huffman and Garlan Steed ascended to the City Council as elected Councilmen. Shortly thereafter, in July, they appointed Vince DiMaggio as City Administrator and City Secretary, offering him an annual salary of $75,000 and a vehicle allowance.

9. As in September 2011, Judy Kealy joined the city's administrative team as City Secretary, earning an annual salary of $27,560. Meanwhile, DiMaggio continued his role as City Administrator, receiving a salary increase to $80,650, in addition to his vehicle allowance.

10. From the summer of 2012 to the spring of 2013, both DiMaggio and Kealy enjoyed multiple salary increases. Kealy's annual salary rose to $36,000, while DiMaggio's increased to $106,000, not including his vehicle allowance.

11. On January 2013 David Huffman resigned from the City Council in January. An investigation was launched, revealing that from 2012 to April 2013, Huffman, Steed, and DiMaggio, had been involved in questionable financial activities. These included DiMaggio receiving a $27,000 bonus from the City, authorized by Huffman and Steed, among other financial irregularities. Consequently, in April 2013, DiMaggio resigned as City Administrator, and Steed stepped down from the City Council.

12. Between May or June 2013, City Secretary Judy Kealy sought the assistance of Ms. Bell, inviting her to join the City of Teague as the Financial Bookkeeper. Her task was to rectify the financial issues caused by the former City Administrator, Financial Bookkeeper, and Councilmen.

13. By October 2013, Plaintiff officially assumed her role as the City's Financial Bookkeeper, with her first day on the job being December 23, 2013. Throughout 2014, she dedicated her time to identifying and correcting financial errors and issues left by the previous Councilmen and

employees.

14. In January 2017, Plaintiff was promoted to the dual roles of City Secretary and City Administrator.

15. By June 2018, she had her first disagreement with David Huffman, who demanded the City install water and sewer taps on his property free of charge. When Ms. Bell and Public Works Director Jacob Cowling informed him of the charges, Huffman became upset, claiming a prior verbal agreement with a former Mayor. Ms. Bell insisted on following the City Code of Ordinance due to a lack of documentation of this agreement.

16. Fast forward to May 2022, Huffman was elected as Mayor, with Steed and Lois Mims joining him as City Councilmen. Shortly after, in June, Mayor Huffman issued a veiled threat to Plaintiff, implying her success was contingent on his.

17. From July to August 2022, Plaintiff found herself at odds with Mayor Huffman on several matters, including the rehiring of Huffman's friend, Shirley Mays, a former Municipal Judge. This disagreement culminated in a private meeting in late September or early October, where Mayor Huffman suggested Ms. Bell to seek employment elsewhere, threatening to split her position and reduce her pay.

18. In November 2022, a series of incidents involving Mayor Huffman, Charles Gregory, and property on Mulberry St. led to Ms. Bell providing a police witness statement. The property owner had filed a complaint after discovering Gregory had taken pictures inside her home. Following this, the police chief served Mayor Huffman and Gregory with a Criminal Trespass notice at the property owner's request.

19. On December 12, 2022, Mayor Huffman and Plaintiff met to discuss his intentions and the

*Plaintiff's Original Complaint*

legality of his proposed actions. The Mayor became upset when Miss Bell informed him that some of his plans were not legally actionable. He also took offense when Miss Bell suggested they meet on a Friday or the weekend for more planning time.

20. During a meeting with Alderman Steed on December 29, 2022, office staff expressed concerns about his line of questioning. Steed queried why the former City Manager, Mr. DiMaggio, was paid significantly more and had a full-time secretary despite lacking prior City Manager experience. Steed responded that he would always support the Mayor's wants, a sentiment he had previously expressed.

21. Mayor Huffman and his Councilmen illegally stripped Ms. Bell of her hiring and termination authority, and also remover her authority to supervise and manage the department heads. This was in direct violation of a local ordinance that grants this authority to the City Administrator/City Secretary, a position held by Plaintiff at the time. No ordinance was presented or passed to authorize these changes.

22. On December 12, 2022, Plaintiff had her vehicle allowance, benefit for her position, removed with no due explanation.

23. On December 30, 2022, Mayor Huffman was present in the City Hall to deliberate on the forthcoming Council Meeting and Agenda with Plaintiff. He strategically timed his arrival to coincide with the departure of the office staff, ensuring a private discussion. Miss Bell, however, had to break the news to Mayor Huffman that the packets' dispatch would be delayed until Tuesday due to the intervening holiday. Furthermore, Mayor Huffman expressed his desire to reintroduce the separation of two positions to the Agenda.

24. Fast forward to January 9, 2023, before the City Council meeting, Ms. Bell, in collaboration

*Plaintiff's Original Complaint*

with Chief of Police Philpott, brought to Mayor Huffman's attention the legal scrutiny surrounding Miss West's appointment from the December meeting, the meeting was being questioned for legality to which Mayor Huffman replied that he didn't care and he was the chief executive officer and she would stay. He remained unfazed, asserting his authority and insisting on Miss West's continued tenure. The City Council, during the meeting, unanimously voted for Plaintiff's position without a proposed amended ordinance, raising prima facie suspicions of gender discrimination. During the meeting, the following events raised:

    a. It was voted and passed 3-2 to amend the ordinance to separate the two positions. However, when asked about the changes to be made since an amended ordinance was provided, there was insufficient guidance provided, and there was not enough council action to legally prepare a document.

    b. The Council Passed it 3-2 to establish the City Secretary as a part-time position at $25,000/year. However, the ordinance and budget were not amended to reflect this change, rendering it legally invalid.

    c. The Council Passed it 3-2 to establish the City Administrator salary at $45,000 annually, with a bid basis not to exceed $65,000. Again, the ordinance and budget were not amended to reflect this decision, making it legally invalid.

    d. The Council Failed to appoint Ms. Bell to the position of City Administrator, despite her already being appointed to the role. This motion failed 2-3. According to the City Attorney, the Council's actions regarding Ms. Bell's employment status were not properly addressed, as they only acted on positions.

    e. The Mayor attempted to deny Ms. Bell the right to have her public hearing in

6

*Plaintiff's Original Complaint*

an open session. Despite her written request, she had to object in the open meeting to secure her right.

    f. During the public hearing in the open meeting, no individual was able to highlight any wrongdoing or performance issues on Ms. Bell's part. Alderman Steed mentioned that the last documented annual evaluation of Ms. Bell was in March 2019. Ms. Bell consistently requested her evaluation to be conducted annually, but it was out of her control for the Council to act on it. Each year, she was informed that there were no issues with her performance, thus no evaluation was conducted.

    g. Alderman Mathison reiterated his concerns from the previous month, stating that the Council's actions towards Ms. Bell could lead to a lawsuit and a significant settlement due to mistreatment.

25. Alderman Steed, visited City Hall to discuss the upcoming meeting with Ms. Bell. During their conversation, she revealed the mayor's repeated cancellations and his preference for email communication over in-person meetings. Alderman Steed, a staunch supporter of the mayor, urged the author to engage in a dialogue with the mayor before the meeting to iron out any issues. The conversation took a turn when Plaintiff highlighted the pay disparity issue, citing an instance where male counterparts were paid significantly more. This revelation seemed to unsettle Alderman Steed, prompting him to abruptly end the conversation.

26. On January 24, 2023, Plaintiff received an email from Mayor Huffman, who insisted on her part-time status and demanded information on her remaining sick days, her plans for making up additional hours, and her daily schedule. Ms. Bell responded by reiterating that no actions had been taken regarding her position with the City, as per the City Attorney, and addressed his other

queries and concerns.

27. The following day, Plaintiff lodged a formal complaint against Mayor Huffman with Mayor Pro Tempore Mathison and City Attorney Regina Edwards, alleging unfair treatment.

28. On February 9, 2023, Mayor Huffman declined to sign Bell's Payroll Direct Deposit and confronted her about it. She reminded him of his unresponsiveness to her email on January 24, 2023, where she had detailed her working hours. She also reminded him that Attorney Andy Messer had informed him that no action had been taken on her pay, and therefore, her pay and job status would remain unchanged. The plaintiff further pointed out that she reports her working hours to him daily via email and that labor laws mandate Mayor Huffman to pay her. Mayor Huffman reluctantly agreed to sign the payroll on February 9th but demanded a written letter from the former City Attorney Law Firm Messer Fort McDonald, confirming Bell's employment status and the meeting's proceedings, for any future approvals and signatures.

29. On the first day of March 2023, a strategic meeting was convened involving Plaintiff, Mayor Huffman, and Mayor Pro Tempore Mathison. The agenda of the meeting was to discuss the restructuring of office roles due to an impending maternity leave of a staff member. Mayor Huffman proposed that Administrative Assistant Nakisha Scott would temporarily assume the roles of Accounts Payable and Payroll, with Bell's guidance. Concurrently, Bell would take on the responsibilities of Court Clerk, new hire onboarding, financial reporting, reconciliations, and other miscellaneous tasks.

30. A week later, on March 8, 2023, Plaintiff sought Mayor Pro Tempore Mathison's assistance in determining the status of her grievance, which she had initially filed with the City in January 2023. Mr. Mathison contacted Mr. Crawford, who expressed his belief that the issue had been

resolved and questioned whether Ms. Bell was still employed with the City.

31. The following day, at precisely 5:44 pm, Plaintiff received a response from City Attorney Crawford. He concurred with his predecessor that no adverse employment action had been taken against her. He also informed Ms. Bell that he had not come across any formal city policies or procedures. He further stated that as the chief executive, the mayor had the authority to inquire about Ms. Bell's availability and time management due to the significance of her role to the city. He assured Ms. Bell that he had advised the Mayor not to consider the assertion of her legal rights when contemplating any adverse employment action.

32. By March 20, 2023, at around 11:00 am, Mayor Huffman requested a meeting with Plaintiff in his office. Councilman Garlan Steed was present, and Constable Daniel Ramsey was stationed outside the door. The mayor queried Ms. Bell about the changed locks on her office door and her decision to withhold approval of the City Attorney's invoice. Plaintiff clarified that she had directed Hailey to forward the invoice to him for review and verification before payment. The Mayor then vaguely mentioned upcoming investigations and emphasized the need for thoroughness.

33. After this event, Mayor Huffman informed Plaintiff that she was being placed on administrative leave without pay for a maximum of 120 days, pending the outcome of the investigations. He read aloud portions of the "Statement of Release" addressed to Plaintiff but declined to disclose the nature of the complaints or investigations against her. Plaintiff handed over her cell phone to the Mayor, collected her personal belongings under the watchful eye of Constable Ramsey, and exited the building at approximately 11:25 am.

34. On April 10, 2023, Mayor Huffman publicly announced at the City Council Meeting that Plaintiff had not been given a financial disadvantage and was still to be paid. Neither Plaintiff nor

the firm was ever notified of the status change regarding Plaintiff being paid while on leave. Upon not receiving notification or a direct deposit slip, Plaintiff checked their personal bank account and found a deposit from the City of Teague. When inquired, Plaintiff was informed that they would receive their remittance of payment via mail, which would include details of the payment. Subsequently, Plaintiff received the paystub for April 6, 2023, on April 17, 2024.

35. Beginning in April 2023, Mayor Huffman made several public statements through posts on his official City of Teague Mayor's Facebook account, attacking Plaintiff's character, making false allegations, and derogatory comments. These statements have caused issues for Plaintiff when seeking other employment.

36. On May 22, 2023, Administrative Leave was extended until the July 10, 2023 Council Meeting, pending a complete investigation by the City Council into the "issues" or allegations made by the Mayor. Neither Ms. Bell nor the firm was notified of this extension; Plaintiff obtained the information through a third party. As part of the council's action regarding the investigation, the Plaintiff was required to prepare, provide, and present their defense, evidence, and supporting documentation regarding the two "issues" or accusations made by Mayor Huffman. Despite attempts to obtain more information and details, the City never responded.

37. Additionally, at the May 22, 2023 meeting, the Council passed a motion censuring Mayor Huffman for exhibiting behaviors unbecoming of an elected official. Comments made during the meeting by the council indicated that the censure was due to negativity directed towards Plaintiff.

38. Plaintiff was terminated on July 10, 2023, due to a lack of confidence. Specifically discussed was the damage inflicted upon Plaintiff's reputation by the Mayor, leading the Council to believe that Plaintiff could not be successful if they were to return due to the prevailing hostility.

39. On July 11, 2023, a councilman texted Plaintiff to advise them to include TX government code 551.146 in their lawsuit because the mayor disclosed in an open meeting what the Council specifically discussed in closed session during the May 22, 2023 meeting, which is in direct violation of the open meetings act.

40. On August 31, 2023, Plaintiff was notified by the Texas Workforce Commission that Mayor Huffman reported to them that Plaintiff was terminated due to incompetence in handling contracts, costing the city revenue, exhibiting unbecoming behavior of an official, making racial slurs to subordinates, and financial mismanagement. Plaintiff asserts that these allegations are untrue, and they were never informed of any such reasons for their termination or investigation. It is also noted that Mayor Huffman was not present at the meeting when Plaintiff was terminated, and the false reporting by Mayor Huffman delayed Plaintiff's unemployment benefits for a significant period.

41. During Plaintiff's Texas Workforce Commission hearing, the City Attorney acknowledged the Mayor's wrongdoings and contradicted the reasons provided for the Plaintiff's termination. The hearing officer provided detailed findings regarding what the City reported to them and the conclusions reached during the hearing.

42. Since being discharged on July 10, 2023, representatives and employees of the City have contacted Plaintiff numerous times for assistance and advice.

43. The underlying reason for Mayor Huffman's actions appears to be his inability to manipulate Plaintiff to his whims. Consequently, she has suffered and continues to endure mental distress, necessitating therapeutic intervention. Therefore, fair and reasonable compensation for Ms. Bell's lost wages, benefits, and mental anguish since July 10, 2023, is warranted.

44. Plaintiff asserts similarly situated male employees as Vince DiMaggio were treated more favorably because they earned higher wages for the same or similar work; and were not disciplined in the same manner as Plaintiff (being placed on unpaid administrative leave). Male employees were not scrutinized or discriminated in the same manner as female employees. Moreover, after Plaintiff filed a grievance highlighting the unfair treatment and pay disparities; Defendant launched an investigation and pretextually placed Plaintiff on administrative leave without any explanation as to what conduct was attributable to the punishment.

## VII. CAUSES OF ACTION

### COUNT 1 – RETALIATION UNDER TITLE VII/TCHRA

45. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

46. Title VII and the Texas Labor Code prohibit retaliation against an employee who opposes a discriminatory employment practice.

47. To establish a prima facie case of retaliation, Plaintiff pleads:

   a. Plaintiff participated in a protected by filing a grievance against Mayor Huffman in January 2023, asserting unfair treatment based on her gender and pay disparities based on gender;

   b. Plaintiff suffered an adverse employment action when she was placed on administrative leave on March 20, 2023, which affected the terms, conditions, and privileges of her employment.

   c. Plaintiff suffered an adverse employment action when she was discharged on July

        10, 2023, under false and unnotified pretexts.

    d. Plaintiff suffered an adverse action because of her protected complaint because Plaintiff was placed unpaid administrative leave less than two months after she complained about Mayor Huffman and discharged shortly after. Mayor Huffman had actual knowledge of Plaintiff's grievance and Mayor Huffman decided to place Plaintiff on administrative leave and then discharge her. Therefore, Plaintiff alleges there is a causal relationship between her protected complaint and the adverse action that directly followed.

48. Defendant intentionally retaliated against Plaintiff because of Plaintiff's claim on her unequal treatment based on gender and pay disparities, and lack of accountability in workspace procedures, which was made to Defendant in violation of the Title VII, 42 U.S.C. 2000(e)(3), and the Texas Labor Code § 21.055.

49. Ms. Bell was experiencing discrimination and a hostile work environment to appropriate personnel at City of Teague on multiple occasions, specifically Mayor Huffman because she opposes a discriminatory employment practice.

50. Defendant's alleged reasoning is pretext given the timing of Plaintiff's protected activity and termination.

51. Because Defendant retaliated against Plaintiff in direct violation of Title VII and Chapter 21 of the Texas Labor Code for complaining about discrimination and the work environment, Plaintiff now suffers damages and continues to suffer damages, including but not limited to: loss of wages, loss of opportunities, emotional distress, mental suffering, just to name a few . Moreover, Defendant failed to properly investigate Plaintiff's complaints and requests and ultimately

retaliated against Plaintiff for making complaints. Defendant continued its discriminatory and retaliatory practices after Plaintiff engaged in protected activity, leading to unpaid leave causing Plaintiff damages.

### COUNT 2 – HOSTILE WORK ENVIRONMENT UNDER TITLE VII/TCHRA

52. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

53. Plaintiff respectfully submits that Defendant has created a hostile work environment in violation of Title VII and TCHRA. Both Title VII and TCHRA prohibits employment discrimination based on race, color, disability, religion, sex, national origin, or age. 42 U.S.C. 2000(e)(2); Tex. Lab. Code Ann. § 21.051. To prove her hostile work environment claim, Plaintiff pleads:

   a. Plaintiff belongs to a protected class (female);
   b. Plaintiff was subjected to unwelcome harassment;
   c. The harassment was based on Plaintiff's protected class (female);
   d. The harassment affected a term, condition, or privilege of employment when Plaintiff was placed on administrative leave by Mayor Huffman and shortly thereafter discharged.

54. The Defendant's actions have created an environment that is intimidating, severe, hostile, pervasive, and offensive to reasonable people, thereby violating Title VII and TCHRA. Plaintiff alleges the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

55. The Plaintiff has suffered emotional distress, loss of professional reputation, and loss of income as a result of the Defendant's actions. Title VII and TCHRA provides for remedies including reinstatement, back pay, compensatory damages, and punitive damages. The Plaintiff is entitled to these remedies due to the Defendant's violation of the TCHRA.

56. As detailed above, Ms. Bell has overwhelming evidence that establishes a hostile work environment during her employment with the City of Teague since she has been placed on and shortly thereafter discharged even if she was only doing her job.

### *COUNT 3* – **GENDER DISCRIMINATION UNDER TITLE VII/TCHRA**

57. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

58. Title VII and TCHRA prohibit employers from discriminating against employees on the basis of gender. 42 U.S.C. § 2000(e)(2); Tex. Lab. Code § 21.051. TCHRA is modeled after Title VII of the Civil Rights Act of 1964.

59. In the present case, the Defendant has engaged in gender discrimination by treating Plaintiff differently based on her gender. This is a clear violation of Title VII and TCHRA, which expressly prohibits such discriminatory practices.

60. To establish a *prima facie* case of gender discrimination under the Title VII and TCHRA, the Plaintiff pleads:

    a. Plaintiff is a member of a protected class (female).

    b. Plaintiff was qualified for her position, and never had any performance deficiencies during her tenure. Moreover, Plaintiff was brought in based on her qualifications to rectify Defendant's financial books.

    c. Plaintiff suffered an adverse employment action when she was placed on and shortly thereafter discharged even if she was only doing her job.

    d. Moreover, Plaintiff alleges similarly situated male employees were treated more favorably and were not placed on unpaid administrative leave for the same or similar circumstances. Based on Defendant's selective discipline amongst female employees versus males, Plaintiff alleges she was disparately treated in comparison to her male counterparts.

61. There is evidence that shows other similarly situated male employees were treated more favorably. Based on Plaintiff's unsolicited and unexplained administrative leave and dismissal, Plaintiff will also be able to show that she was treated more unfavorably compared to her male counterparts based on the discriminatory rhetoric conveyed in the municipality, who were paid more for less. There is no question that the City of Teague, through Mayor David Huffman's actions, created and condoned a discriminatory work environment for Ms. Bell based on her gender (woman).

62. The Defendant's actions are not only a clear violation of Title VII and TCHRA, but they also go against the spirit of the law, which is to ensure equal employment opportunities for all, regardless of gender. Based on Defendant's discriminatory actions, Plaintiff continues to suffer damages, including but not limited to, loss of income, loss of benefits, loss of professional reputation, emotional distress, just to name a few.

*Plaintiff's Original Complaint*

## COUNT 4 – VIOLATION OF EQUAL PAY ACT
## 29 U.S.C. § 206(d)

63.	Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

64.	The Equal Pay Act ("EPA") prohibits employers from discriminating on the basis of sex by paying wages to employees of one sex that are less than the rate paid to employees of the opposite sex for equal work on jobs that require equal skill, effort, and responsibility and are performed under similar working conditions. 29 U.S.C. § 206(d)(1).

65.	Plaintiff alleges Defendant pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." For instance, Plaintiff has actual knowledge of Vince DiMaggio, Jeff Looney, whose salary is available trough City of Teague Salary History.

66.	After plaintiff's dismissal The City appointed the Current Chief of Police as interim City Secretary in addition to his current duties and gave him a pay increase in addition to help him reduce his workload. They restructured his department to allow for another ranking officer to manage the department.

67.	The defendant cannot justify its discriminatory actions because the pay differentials are not based on a seniority system or merit system. According to Defendant's organizational chart, Plaintiff as City Administrator/City Secretary and performed similar work as her male counterparts who received significantly higher wages for the same or similar work.

68.	Because gender is a factor in Defendant's pay differentials to similarly situated employees as Plaintiff, Defendant has violated the EPA, which has caused Plaintiff damages, including but

not limited to, loss of income, loss of benefits, loss of professional reputation, loss of future opportunities, emotional distress, just to name a few.

## VIII. JURY DEMAND

69. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## IX. PRAYER

70. For the reasons set forth above, Plaintiff THERESA BELL respectfully prays that Defendant be cited to appear and answer herein, and for the following relief:

   a. a judgment in Plaintiff's favor on all claims asserted in this complaint;

   b. past and future wages;

   c. lost employment benefits.

   d. compensatory damages.

   e. Exemplary damages.

   f. pre-judgment and post-judgment interest as permitted by law;

   g. reasonable attorney's fees and costs; and

   h. for such other and further relief to which Plaintiffs may show himself to be justly entitled.

Respectfully submitted,

Kennard Law P.C.

**Alfonso Kennard, Jr.**
State Bar No. 4036888
Federal ID: 713316

Alfonso.Kennard@kennardlaw.com
filings@kennardlaw.com
**Eddie Hodges, Jr.**
State Bar No. 24116423
Federal ID: 3479748
Eddie.Hodges@kennardlaw.com
5120 Woodway Dr., Ste 10010
Houston, Texas 77056
PH: 713-742-0900
Fax: 832-558-9412
**ATTORNEYS FOR PLAINTIFF**

*Plaintiff's Original Complaint*